## JENKINS *v.* CENTRAL OF GEORGIA RAILWAY CO.

Under the facts alleged in the plaintiff's petition, he entered the premises of the defendant railway company as a volunteer and mere licensee, and the injuries he received were attributable, not to an omission by the company to perform any duty which it owed to him as such, but to his own voluntary act.

Argued January 23,—Decided February 19, 1906.

Action for damages. Before Judge Bartlett. Haralson superior court. July 18, 1905.

*S. L. Craven* and *W. R. Hutcheson,* for plaintiff.
*J. Branham* and *McHenry & Maddox,* for defendant.

EVANS, J. The railway company demurred to the plaintiff's petition; he amended it, and the result produced was substantially as follows, so far as the setting forth of a cause of action is concerned; During the month of January, 1903, the defendant company operated a steam-shovel within half a mile of plaintiff's home near Felton, in Haralson county, which was used for the purpose of hoisting dirt and loading the same on cars, to be transported to various points along the company's railway. On or about January 12, an employee of the company came to plaintiff's house and told him that "Mr. Clint Morgan, who was conductor on the train of cars which transmitted the dirt from the steam-shovel," wanted plaintiff to come up to where the shovel was located, for the purpose of giving him some information as to where the lines of certain land lots were, etc. As the company's employees in charge of the steam-shovel knew, the plaintiff was familiar with the location of the land lines and the numbers of the land lots in the vicinity, and the desired information was sought by defendant's employees in order that they might not raise dirt with the shovel from lands other than those from which they had a right to take soil. In response to the message thus delivered to him, plaintiff went to the steam-shovel, though the day was very cold and ice was to be found where

water had stood upon the surface of the ground. When he arrived, he was informed by one Mr. Turner, one of the company's employees, that the conductor in charge of the dirt-train had gone off with a train load of dirt and would be gone thirty minutes. Upon hearing this, plaintiff started towards a fire burning on the ground near the shovel, with a view to warming himself; whereupon Turner told him to get up in the box or car which enclosed the boiler and engines, as the boiler was hot and this was a much better place to warm. He assisted plaintiff up the steps attached to the car enclosing the boiler, the steps being very small, hard to ascend, and extending from a point near the ground to the floor of the car, a distance of five and a half or six feet from the ground. Turner told plaintiff "it would be perfectly safe for him to ascend the steps and to come down same, as he would assist him in doing so. The reason for Mr. Turner's saying it would be perfectly safe for petitioner to ascend said steps to said box enclosing said boiler and engines, as aforesaid, was because petitioner objected to ascending said steps on account of his age and had not good use of himself, and told said Mr. Turner he was afraid he would fall and hurt himself in doing so, but said Mr. Turner assured your petitioner that he would assist him up into and down from said box,  .   .   and did assist your petitioner up into said box safely." Within twenty-five or thirty minutes thereafter, and before Morgan, the conductor, had returned, an employee remarked that Mr. C. B. Wilburn, superintendent of the Chattanooga division of the defendant's railway, was coming. Turner immediately left the scene, as did all the rest of the employees, leaving plaintiff alone in the box or car, and without offering him any assistance in getting out. All of them went out of his sight and hearing. After he had waited a considerable time, about an hour, and until it was growing late in the afternoon, expecting Turner or some other employee to return to assist him to the ground, he undertook to get out by himself, as none of them had returned, using all precaution to get out of the box without hurt. When he put his foot on the top step, he slipped, fell to the ground, and was seriously injured, the step having ice and dirt on it which caused his foot to slip as he stepped thereon. The ice and dirt had been allowed to there accumulate during the day, which fact was known to Turner and other employees at the steam-shovel, but of which fact plaintiff was ignorant. Having

been invited by Turner to ascend the steps, and having received his assistance in doing so, plaintiff did not detect the condition of the steps in ascending them, and he could not readily have done so, because he was old and his eyesight was bad, he being at the time some sixty-five years of age. "Turner was the superintendent and person in charge of said steam-shovel, and had the management, working and operating thereof; . . was authorized to invite and permit, and did invite, permit, and assist your petitioner to go upon said steam-shovel." On account of plaintiff's feeble condition and because "he could not see in the dark sufficiently well to safely travel from said steam-shovel to his home after dark on said evening, it then growing late and colder as night grew nearer, he became anxious and uneasy, and it was necessary for him to get off of said shovel and go to his home before it grew darker or colder, . . a reasonable time having elapsed in which he had awaited the return of said Turner," and plaintiff having "then and there loudly as he could called to said Turner to return and assist him in alighting from said shovel." Plaintiff was entirely free from fault; but the defendant company was grossly negligent, (1) in allowing ice to accumulate on the steps, and (2) in not complying with the contract to assist him safely from the box to the ground, as its employees had promised to do, it being the duty of the company and its agents to see that he reached the ground safely, he being its guest by the invitation of its agents and employees, and having called at the steam-shovel upon a mission of interest to the railway company but not to himself. It was incumbent upon the company to see to it that he arrived safely at the steam-shovel, that he received no injury while he remained there on this mission, and that he departed safely.

After the plaintiff had amended his petition, the defendant company renewed its demurrer to it, and the court ruled that it set forth no cause of action, and accordingly dismissed the action. We are called on to decide whether or not this was the proper direction to give to the case. At the outset it is pertinent to remark that even were the plaintiff a guest of the railway company, it was not an insurer of his safety, as the pleader apparently assumes in stating his conclusions of law and fact. We can not undertake to judicially say that, under the facts alleged, the plaintiff came upon the premises of the railway company upon its express invitation

and as its welcome guest.   To do so would be to hold, as matter of
law, that the conductor of a dirt-train is to be regarded as having
implied authority to indite and transmit invitations to friends or
strangers to visit and consult with him on matters of moment inci-
dent to his business.   No such authority can be implied from the
official designation given to the employee who invited the plaintiff
to call.   *Central Ry. Co.* v. *Morris,* 121 *Ga.* 486.   He came not as
a guest, therefore, though he may have been welcomed as one by
Mr. Turner, "the superintendent and person in charge" of the
steam-shovel, who "was authorized to invite and permit" the
plaintiff to get upon the car in order to warm himself while await-
ing the return of the conductor of the dirt-train.   At best, this
authority was limited to extending to visitors calling upon em-
ployees license to enjoy the comforts afforded by the compartment
into which Mr. Turner "did invite, permit and assist" the plaintiff.
Relatively to the company, the plaintiff was a mere licensee, and it
was under no duty to point out to him the obvious fact that the
steps were covered with dirt and ice.   Nor was it under any obliga-
tion to render him any assistance in entering or departing from the
car into which he was invited by Turner, nor does it appear that he
was acting within the scope of his duties in rendering the proffered
assistance and promising to assist the plaintiff in alighting.   The
courtesy and kindness with which this employee treated this elderly
and infirm gentleman imposed upon the company no duty of hold-
ing itself in readiness to assist him whenever he might choose to
leave the safe and comfortable quarters he was permitted to occupy
while awaiting the return of its conductor.   The plaintiff had the
alternative of patiently waiting till Turner returned and was ready
to perform his purely gratuitous and distinctly individual under-
taking to render him the promised assistance, or voluntarily assum-
ing the risk of leaving the car in safety without such assistance,
despite his infirmities.   He chose the latter, the hazardous course,
and was injured.   The company is not bound by his election,
whether he did or did not act with ordinary prudence.

*Judgment affirmed.   All the Justices concur.*